1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

TONY M.,

7                              Plaintiff,

8        v.

9   COMMISSIONER OF SOCIAL SECURITY,

10                              Defendant.

Case No. 3:19-cv-06140-TLF

ORDER AFFIRMING DECISION

11        Plaintiff has brought this matter for judicial review of defendant's denial of his

12   application for disability insurance benefits.

13        Plaintiff filed his application for Title II SSDI benefits on June 23, 2016, asserting

14   a disability onset date of May 17, 2016. AR 232-233. The ALJ determined that plaintiff

15   was not disabled, after holding a hearing on June 1, 2018 and October 2, 2018. AR 13-

16   30, 31-50, 51-91. Plaintiff seeks review of the ALJ's decision dated December 5, 2018.

17        The parties have consented to have this matter heard by the undersigned

18   Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

19   MJR 13.

20                        I.    ISSUES FOR REVIEW

21    1. Did the ALJ properly determine plaintiff to be capable of light work in the
         assessment of residual functional capacity (RFC)?

22    2. Did the ALJ err at step three by failing to consult a medical expert on plaintiff's
         cardiological impairments?

23    3. Did the ALJ properly assess the lay witness testimony of plaintiff's wife,
         mother, friend, and former co-workers?

24    4. Did the ALJ improperly rely on the vocational expert's testimony?

25

ORDER

1

2          II.      BACKGROUND

3          On June 23, 2016, plaintiff filed for Title II (SSDI) disability, alleging an onset date

4    of May 17, 2016. AR 232-233. The claim was denied initially and upon reconsideration.

5    AR 117-19, 128-30. Administrative Law Judge ("ALJ") Rebecca L. Jones held hearings

6    on June 1, 2018 and October 2, 2018. The ALJ issued an unfavorable decision on

7    December 5, 2018. AR 13-30. The Social Security Appeals Council denied plaintiff's

8    request for review on September 27, 2019. AR 1-3.

9          Plaintiff seeks judicial review of the ALJ's December 5, 2018 decision. Dkt. 15.

10         III.     STANDARD OF REVIEW

11         The Commissioner uses a five-step sequential evaluation process to determine if

12   a claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's RFC to

13   determine, at step four, whether the plaintiff can perform past relevant work, and if

14   necessary, at step five to determine whether the plaintiff can adjust to other work.

15   *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of

16   proof at step five to show that a significant number of jobs that the claimant can perform

17   exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20

18   C.F.R. § 416.920(e).

19         The Court will uphold an ALJ's decision unless: (1) the decision is based on legal

20   error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*,

21   874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

22   reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

23   *Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305

24   U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

25

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

## IV.    DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of congestive heart failure (CHF), cardiomegaly status post angioplasty and stenting of RCA, pulmonary hypertension, obesity, and essential hypertension. AR 18.

Based on the limitations stemming from Plaintiff's impairments, the ALJ found that Plaintiff could perform a reduced range of light work. AR 19. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform her past work, but

1    could perform other light, unskilled jobs; therefore the ALJ determined at step five of the

2    sequential evaluation that Plaintiff was not disabled. AR 23-24, 81-90.

3          A.      *Whether the ALJ erred in finding that plaintiff was capable of light work,*

4                  *rather than sedentary.*

5          Plaintiff argues that the ALJ should have limited the RFC to the sedentary

6    exertional level, because the ALJ limited plaintiff to standing and walking for 2 hours of

7    an 8-hour workday. Dkt. 14, at 5-6.

8          Residual functional capacity is the most a claimant can do despite existing

9    limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404,

10   Subpart P, App. 2 § 200.00(c). The ALJ is responsible for determining a plaintiff's RFC.

11   20 C.F.R. § 404.1546(c).

12         The ALJ determined that plaintiff's RFC was at the light exertional level, but with

13   additional limitations:

14         [Plaintiff] has the residual functional capacity to perform light work, as
           defined in 20 C.F.R. 404.1567(b), including the ability to stand and/or walk
15         two hours of an eight-hour workday. He is able to occasionally climb
           ladders, ropes, and scaffolds and can occasionally climb ramps and stairs,
16         stoop, kneel, crouch, and crawl. He is able to perform work that allows him
           to avoid exposure to extreme cold, extreme heat, fumes, odors, dusts,
17         gases, and hazards.

18   AR 19. The Administration has issued a ruling elaborating on the light exertional level:

19         The regulations define light work as lifting no more than 20 pounds at a
           time with frequent lifting or carrying of objects weighing up to 10 pounds.
20         Even though the weight lifted in a particular light job may be very little, a
           job is in this category when it requires a good deal of walking or standing -
21         - the primary difference between sedentary and most light jobs. A job is
           also in this category when it involves sitting most of the time but with some
22         pushing and pulling of arm-hand or leg-foot controls, which require greater
           exertion than in sedentary work; e.g., mattress sewing machine operator,
23         motor-grader operator, and road-roller operator (skilled and semiskilled
           jobs in these particular instances). Relatively few unskilled light jobs are
24         performed in a seated position.

25

ORDER

1    SSR 83-10, 1983 SSR LEXIS 30, *12-14. While these positions may be uncommon, a

2    job may be classified as light even if it does not require a good deal of standing and

3    walking, if it involves sitting while using hand or foot controls, or it requires lifting up to

4    20 pounds maximum or 10 pounds frequently. 20 C.F.R. § 404.1567(b).

5           Plaintiff objects to the designation of light work based on the perceived conflict

6    between the requirement of "a good deal of walking or standing" and plaintiff's

7    limitation of standing and walking no more than two hours in a day. Dkt. 14, at 5-6.

8    Plaintiff argues that a two-hour limitation is only consistent with sedentary work

9    capability. Plaintiff does not assert that he is unable to meet the lifting requirements of

10   light work, or that he is unable to perform a seated job involving pushing and pulling

11   hand and foot controls. *Id.* Plaintiff alleges that the RFC does not properly incorporate

12   the opinion of Dr. Platter, a State agency medical consultant who opined that plaintiff

13   could only stand or walk for two hours out of eight. Dkt. 14, at 6, citing AR 110.

14          Yet the ALJ gave Dr. Platter's assessment "great weight" and directly

15   incorporated the stand/walk limitation into the RFC. AR 19, 22. Nothing in the RFC

16   indicates that the two-hour limitation is anything but an additional restriction on

17   plaintiff's ability to do light work, consistent with plaintiff's lower assessment of the

18   ability to stand and walk. *See* AR 84 (in a hypothetical to the vocational expert, the ALJ

19   described the two-hour stand/walk limitation as an "additional limitation" on RFC to

20   perform work at the light exertional level).

21          The ALJ assessed plaintiff's RFC to be between the light and sedentary

22   exertional levels – he is capable of standing and walking at a sedentary exertional

23   level, and capable of lifting and carrying at the light exertional level. AR 19; *see* 20

24

25

1  C.F.R. § 404, Subpart P, App. 2. This assessment was supported by substantial

2  evidence unchallenged by plaintiff; therefore, the ALJ did not err.

3        *B.*      *Whether the ALJ improperly relied on vocational expert testimony*

4        Pursuant to SSR 83-12, "[i]f the exertional level falls between two rules which

5  direct opposite conclusions, i.e. "Not disabled" at the higher exertional level and

6  "Disabled" at the lower exertional level... and the individual's exertional limitations are

7  somewhere 'in the middle'" the ALJ is advised to consult a vocational expert for

8  assistance. SSR 83-12; 1983 LEXIS 32 *6-7; *see also Moore v. Apfel*, 216 F.3d 864,

9  869 (9th Cir. 2000) (where the plaintiff's exertional level falls between two of the grid

10  rules, the ALJ should consult a vocational expert as to whether there are any jobs a

11  disability claimant can do despite his or her limitations).

12        At the hearing, the ALJ consulted a vocational expert who opined that there

13  were jobs available that accommodated plaintiff's RFC. AR. 84-86. The vocational

14  expert identified three positions involving light work performed predominantly seated,

15  with a total of two hours walking and standing per day. AR. 84 (electrical accessories

16  assembler, performed at a bench on a stool); AR 85 (agricultural sorter, with numbers

17  reduced to include only seated positions); AR 86 (office helper); *see* SSR 83-10, 1983

18  SSR LEXIS 30, *12-14. On inquiry from the ALJ, the vocational expert testified that her

19  testimony was not in conflict with the DOT. AR. 89-90. The vocational expert also

20  testified that her opinion was in part based on her professional experience. AR 84-86.

21        Plaintiff first argues that the ALJ erred to have relied on the testimony of the VE,

22  because the hypothetical presented to the VE should have limited plaintiff to sedentary,

23  not light work. Dkt. 14, at 7. As discussed above, plaintiff has not shown limitations to

24

25

ORDER

be missing from plaintiff's RFC. The ALJ accurately conveyed to the VE in the hypothetical that plaintiff was capable of the requirements of light work, with the additional limitation of standing and walking two hours in a day. AR 84-86. Accordingly, there was no error to have included plaintiff's capability to do "light work" in the hypothetical presented to the VE. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of a particular claimant. . . .").

Plaintiff also argues that the VE unduly relied on her own experience when she testified that the three specified jobs at the light exertional level could be performed with a two-hour standing and walking limitation. Dkt. 14, at 7. Plaintiff claims that the VE's experience cannot provide substantial evidence on jobs in the national economy, since the VE testified to being most familiar with jobs in the state of Washington. *Id.* The VE testified that "in [her] professional training and experience," the job of electrical accessories assembler was performed seated at a bench, while requiring lifting and carrying at the light level. AR 85. With the same reasoning, the VE also testified that 80 percent of agricultural sorter positions at the light exertional level were performed seated at a table, and that in office helper positions, although the time spent seated or upright would vary, "the majority of the job is performed while the individual is sitting." AR 85-86.

The ALJ is entitled to rely on testimony derived from a vocational expert's experience. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."); *Lamear v. Berryhill*, 865 F.3d

1201, 1205 (9th Cir. 2017) (the opinion of the VE is presumed to comport with the DOT). Where the VE's testimony may depart from the information listed in the Dictionary of Occupational Titles (DOT), the ALJ must ask the VE resolve any apparent conflicts between the VE testimony and the DOT before relying on the opinion of the VE. SSR 00-4p, 2000 SSR LEXIS 8 at *2; *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016); *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether or not the testimony conflicts with the [DOT]").

Here, when plaintiff challenged the VE's experience at the hearing, the ALJ explicitly asked the VE whether her testimony was consistent with the DOT. AR 89-90 ("[H]as your testimony today been consistent with the Dictionary of Occupational Titles?"). The VE answered in the affirmative. AR 90. Accordingly, the ALJ properly relied on the vocational expert testimony.

C.     *Whether the ALJ failed to consult an expert in cardiology regarding plaintiff's listing level condition*

Plaintiff contends the ALJ erred at step three of the sequential evaluation process, by failing to consult a medical expert in cardiology when determining whether plaintiff's impairments were medically equivalent to a cardiological listing. Dkt. 14, at 8-9; *see* AR 19; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B (version effective January 17, 2017).

At step three, the ALJ must evaluate the claimant's impairments to decide whether they meet or medically equal any of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

1   Cir. 1999). If they do, the claimant is deemed disabled. 20 C.F.R § 404.1520(d). The

2   burden of proof is on the claimant to establish he or she meets or equals any of the

3   impairments in the listings. *Tackett*, 180 F.3d at 1098. "A generalized assertion of

4   functional problems is not enough to establish disability at step three." *Id.* at 1100 (citing

5   20 C.F.R. § 404.1526). An ALJ "must evaluate the relevant evidence before concluding

6   that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*,

7   236 F.3d 503, 512 (9th Cir. 2001).

8          To meet a listing, a claimant "must have a medically determinable impairment(s)

9   that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). This Court will

10  uphold an ALJ's finding that a plaintiff does not meet listing criteria if substantial

11  evidence supports that finding. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d

12  1001, 1006 (9th Cir. 2006). "For a claimant to qualify for benefits by showing that his

13  unlisted impairment, or combination of impairments, is "equivalent" to a listed

14  impairment, he must present medical findings equal in severity to *all* he criteria for the

15  one most similar listed impairment." *Sullivan v. Zebley,* 493 U.S. 521, 531 (1980)

16  (emphasis in original)(citing 20 CFR § 416.926(a)).

17         The ALJ assessed whether plaintiff met listings 3.09 (chronic pulmonary

18  hypertension) and 4.02 (chronic heart failure). AR 18-19. On plaintiff's heart conditions,

19  he found that there was no evidence in the record to demonstrate required criteria for

20  listing 4.02. AR 19. Plaintiff argues that an ALJ lacks the requisite medical expertise to

21  assess whether plaintiff's diagnoses (e.g., cardiomegaly, congestive heart failure, a

22  patient assessment at WHO class III with pulmonary hypertension, cardiomyopathy)

23  met or were medically equivalent to a listing. Plaintiff asserts that the ALJ should have

24

25

ORDER

consulted a medical expert to assess the combinations of plaintiff's cardiological

conditions, including the fact that at one point he had been assessed for an ejection

fraction of 30 percent. Dkt. 14, at 8, citing AR 391.

Listing 4.02, chronic heart failure, requires the claimant to demonstrate a

medically documented history of non-acute systolic or diastolic heart failure, resulting in

persistent symptoms of heart failure, three or more separate episodes of acute

congestive heart failure within a consecutive 12-month period or an inability to perform

on an exercise tolerance test. 20 C.F.R. § 404, Subpart P, App. 1, Listing 4.02. Under

the listing, a history of systolic heart failure must include documentation of "left

ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30

percent or less during a period of stability (not during an episode of acute heart failure)."

*Id.* Diastolic heart failure must be shown by evidence of "left ventricular posterior wall

added to septal thickness totaling 2.5 cm or greater with left atrium enlarged to 4.5 cm

or greater." *Id.*

Plaintiff does not specify which of the two medical listings he asserts to meet,

although the Court may infer that listing 4.02 (chronic heart failure) is most relevant to

plaintiff's allegation concerning the ALJ's failure to consult and expand the record with

information provided by an expert in cardiology. Neither does plaintiff explicitly argue

how the combination of his cardiological ailments would medically equivalent to a listing.

This is insufficient to meet plaintiff's burden to establish an error at step three. *See*

*Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a

claimant must establish that he or she meets each characteristic of a listed impairment

relevant to his or her claim. To equal a listed impairment, a claimant must establish

ORDER

1   symptoms, signs and laboratory findings at least equal in severity and duration to the

2   characteristics of a relevant listed impairment[.]"); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th

3   Cir. 2001) (a claimant fails to meet her "burden when she offers no theory, plausible or

4   otherwise, as to how her impairments combine to equal a listed impairment").

5       Furthermore, plaintiff provides no authority for his argument that an ALJ lacks the

6   expertise to assess medical equivalence without consulting an expert. Taken at face

7   value, plaintiff's argument would establish that no ALJ could complete a step three

8   evaluation of cardiological complaints without consulting an additional medical expert.

9   This is not a reasonable interpretation of the law. *See generally, Karabajakyan v.*

10  *Berryhill,* 713 Fed. Appx. 553 (9th Cir. 2017) (physicians' assessments of plaintiff's heart

11  condition did not translate into the restrictive limitations advocated by plaintiff; ALJ

12  properly determined "light work" was appropriate and the RFC was supported by

13  substantial evidence).

14      "An ALJ's duty to develop the record further is triggered only when there is

15  ambiguous evidence or when the record is inadequate to allow for proper evaluation of

16  the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (citing

17  *Tonapetyan*, 242 F.3d at 1150); see also 20 C.F.R. §404.1519a(b). Yet plaintiff has not

18  alleged that the evidence is ambiguous or inadequate, but rather that "[a]n ALJ is not

19  qualified to render an opinion on whether [plaintiff] meets or equals a listing and . . . is

20  not medically trained to determine the functional impact of [plaintiff's] cardiology

21  condition." Dkt. 14, at 8.

22      Here, a State agency medical consultant reviewed plaintiff's medical records in

23  November 2016 and again on reconsideration in January 2017. AR 93-102; AR 104-

24

25

1   114. The consultants considered whether plaintiff's cardiac symptoms met the listing for

2   4.02 chronic heart failure and determined that plaintiff did not meet or equal the listing.

3   AR 95, 102; AR 111-12. Additional records were submitted that included plaintiff's

4   treatment records up to May 24, 2018. AR 684-776.

5        The ALJ considered these records and adopted the consultant's opinions that

6   plaintiff's symptoms were most intense during an episode of acute heart failure in March

7   2016, and that as plaintiff complied with medical treatment, his condition had improved

8   to and been maintained at below listing severity. AR 22-23 (citing, e.g., AR 434, 722).

9   The ALJ cited to continued improvement with treatment after 2017 and in 2018,

10  consistent with the assessment of the state agency medical consultants. AR 22 (citing

11  519, 535, 671, 675).  Therefore, the ALJ provided sufficient evidence to show that new

12  evidence had not changed the consultants' finding that a listing was not equaled, and

13  the ALJ properly exercised her discretion in determining not to seek medical expert

14  advice. *See* SSR 96-6p, 1996 SSR LEXIS 3 at *9-10.

15       D.    *Whether the ALJ properly assessed the lay testimony by plaintiff's friends*

16             *and family*

17       Lay testimony regarding a claimant's symptoms "is competent evidence that an

18  ALJ must take into account," unless the ALJ "expressly determines to disregard such

19  testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236

20  F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the

21  specific record as long as "arguably germane reasons" for dismissing the testimony are

22  noted, even though the ALJ does "not clearly link his determination to those reasons,"

23  and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may

24

25

ORDER

1    "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d
2    639, 642 (9th Cir. 1982).

3        "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the
4    ALJ need only point to those reasons when rejecting similar testimony by a different
5    witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *see also Valentine v.*
6    *Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694, (9th Cir. 2009) (holding that because
7    "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own
8    subjective complaints, and because [the lay witness's] testimony was similar to such
9    complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay
10   witness's] testimony").

11       Here, the ALJ rejected lay testimony from plaintiff's family and friends because
12   (1) the lay witnesses were not medically qualified to make observations about plaintiff's
13   symptoms and (2) the lay witnesses were interested parties. The ALJ also noted that
14   the lay witnesses' testimony, like plaintiff's, was not consistent with the observations of
15   medical doctors assessing that plaintiff's cardiac and pulmonary functioning had
16   improved.

17       These first two reasons are well established error. Lay witnesses such as friends
18   and family are competent to testify on their observations of plaintiff's symptoms and
19   ability to complete daily activities, regardless of their level of medical education. *See* 20
20   C.F.R. § 404.1513(d) (providing that lay witness testimony may be introduced "to show
21   the severity of [the claimant's] impairment(s) and how it affects [his] ability to work"); *see*
22   *also, e.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (it is error to reject the
23   testimony of family members because of lack of support from medical records); *Dodrill*

24

25

ORDER

1   *v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a

2   position to observe a claimant's symptoms and daily activities are competent to testify

3   as to h[is] condition."). It is also error to discount the testimony of friends and family

4   based on their close relationship to the plaintiff, without evidence of actual bias. *See*

5   *Valentine*, 574 F.3d at 694 ("Such a broad rationale for rejection contradicts our

6   insistence that [friends and family are competent to testify] regardless of whether they

7   are interested parties . . .") (citing *Dodrill*, 12 F.3d at 918-19).

8        Despite these errors, the ALJ's failure to properly assess the lay testimony is

9   harmless to the final disability determination. AR 19. All the lay testimony mirrored

10  plaintiff's claims of severe limitations in walking, standing, and lifting, and did not

11  discuss other symptoms beyond those complained of by plaintiff. *See* AR 344, 347, -51,

12  362, 365. The ALJ noted that the lay testimony could be discounted for the same

13  reason the ALJ discredited plaintiff's testimony – that the subjective testimony did not

14  comport with objective evidence that plaintiff's condition, while severe, had significantly

15  improved while plaintiff complied with treatment. AR 19.

16       Improvement with treatment is a clear and convincing reason to discount

17  symptom testimony. Impairments that can be effectively controlled by treatment are not

18  considered disabling for purposes of Social Security benefits. *See Warre v. Comm'r of*

19  *Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); 20 C.F.R. §§ 404.1529(c)(3)(iv-

20  v), 416.929(c)(3)(iv-v) (the ALJ may consider the effectiveness of treatment when

21  assessing testimony). Plaintiff did not challenge the ALJ's assessment of his subjective

22  symptom testimony in his brief to this Court, and only on his reply has plaintiff asserted

23  that the medical record includes evidence that plaintiff's cardiac and pulmonary

24

25

ORDER

1  condition progressed while plaintiff was compliant with treatment. Dkt. 16, at 4, citing AR

2  725-36 (that plaintiff's cardiac function had deteriorated between medical assessments

3  in September 2016 and January 2018).

4          Yet the ALJ considered this evidence along with plaintiff's medical history starting

5  March 2016. AR 22. Among other reasons, the ALJ based his assessment of

6  improvement on plaintiff's most acute experience of heart failure having occurred in

7  March and April 2016, while plaintiff exhibited "extreme noncompliance with medical

8  management." AR 20, 23 (citing AR 381 (in March 2016, plaintiff presented with

9  cardiomegaly and left emergency care against medical advice), 435 (four days later,

10 plaintiff presented with acute heart failure, left ventricular function at 30 percent, and left

11 care against medical advice), 473 (in April 2016, plaintiff presented with hypertensive

12 urgency and remained in hospital care until stable). The ALJ noted that after plaintiff

13 began to comply with medical instruction, he had not such an experience of acute heart

14 failure since (citing AR 519 (in June 2016, plaintiff reported feeling well and to have

15 been compliant with prescribed medication), 675 (after stenting in August 2016,

16 stenosis reduced from 80 percent to 0 percent by November 2016), 671 (after ceasing

17 methamphetamine use per medical advice, plaintiff's left ventricular systolic function

18 recovered to 64 percent in September 2016), 722 (in March 2018, plaintiff's symptoms

19 had not worsened, e.g., left ventricular function estimated at 65-70 percent, despite

20 mildly reduced right ventricular function)).

21         The ALJ noted that plaintiff's testimony that his cardiac functioning was only "a

22 little better" was inconsistent with the medical evidence demonstrating significant

23 objective improvement. AR 23. Accordingly, the ALJ provided a clear and convincing

24

25

ORDER

1  reason supported by substantial evidence to discredit plaintiff's testimony, and therefore

2  this reason must be germane to the lay witnesses whose testimony was discounted.

3  *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694, (9th Cir. 2009).  Even if the

4  ALJ had not erred in assessing the testimonial competency of plaintiff's friends and

5  family, the ALJ would have come to the same determination. *See Stout v. Comm'r Soc.*

6  *Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Accordingly, the error was harmless.

7

8                                              <u>CONCLUSION</u>

9          Based on the foregoing discussion, the Court finds the ALJ properly determined

10  plaintiff to be not disabled. Defendant's decision to deny benefits therefore is

11  AFFIRMED.

12

13          Dated this 31st day of March, 2021.

14

15

16          *Theresa L. Fricke*
            _____
17          Theresa L. Fricke
            United States Magistrate Judge
18

19

20

21

22

23

24

25

ORDER